IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-HC-2146-D

| | |
|---|---|
| SALVADOR ANTONIO DAMIAN LOPEZ, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>BRICK TRIPP, et al., )<br>)<br>Respondents. ) | **ORDER** |

On June 30, 2014, Salvador Antonio Damian Lopez ("Damian" or "petitioner"), a federal inmate proceeding pro se, filed a memorandum in support of a petition for a writ of habeas corpus, seeking his compassionate release, Mem. Supp. Pet. [D.E. 1], together with several exhibits [D.E. 1-1].[1] On July 10, 2014, Damian refiled his petition on the form prescribed for use in this district for section 2241 petitions [D.E. 3]. On December 8, 2014, Damian filed a motion to compel discovery [D.E. 4]. The court now conducts its preliminary review under 28 U.S.C. § 2243 and dismisses the petition.

> In March of 2003, the Federal Bureau of Investigation ("FBI") received information from cooperating sources concerning the activities of the Ignacio Coronel-Villareal drug trafficking organization, a group involved in smuggling illegal drugs from Mexico into the United States. After launching an investigation, the FBI determined that Damian, also known as "Don Chava," was a principal member of the organization in direct contact with Ignacio Coronel-Villareal.
>
> On March 19, 2003, a man who later became a cooperating defendant delivered a duffel bag containing 79 pounds of d-methamphetamine, commonly referred to as "ice," to an undercover FBI agent in El Paso, Texas. After his arrest,

---

[1] Bureau of Prisons records list petitioner's name as Salvador Antonio Damian. See BOP Inmate Locator, http://www.bop.gov/inmateloc/ (search by inmate number) (last visited June 10, 2015).

the cooperating defendant and another individual told the agent that Damian owned the "ice."

At the time of his arrest, the cooperating defendant had in his possession cellular telephones, a global positioning system, address books, and pay-and-owe sheets that cryptically detailed proposed drug transactions and payments between Damian and others. He claimed that Damian tutored him in the narcotic trafficking business, and that Damian would communicate arrangements for drug trades through telephone calls, email messages, and facsimile transmissions. The cooperating defendant also provided the FBI with Damian's email address. With this information, the FBI covertly monitored Damian's drug trafficking through telephone calls and email exchanges.

On December 17, 2003, based on information gathered by the FBI, a grand jury sitting in the Western District of Texas, El Paso Division, returned a two-count indictment charging Damian with conspiracy to possess with the intent to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), 841(b)(l)(A)(ii), and 841(b)(A)(viii) ("count one"), and conspiracy to import 500 grams or more of cocaine and fifty grams or more of methamphetamine, in violation of Title 21 U.S.C. §§ 952(a), 960(a)(l), 960(b)(2)(B), and 960(b)(2)(H) ("count two").

Mexican law enforcement authorities arrested Damian in Mexico City, Mexico, on July 30, 2005. The Government of Mexico later agreed to extradite Damian to the United States. After his arrest in the United States on November 28, 2006, Damian provided a statement to FBI agents. According to the Government, however, his statement was neither complete nor truthful.

Damian elected to forego trial and pleaded guilty, pursuant to a plea agreement, to count one of the indictment. Under the terms of the plea agreement, Damian substantially limited his appellate rights. The Court accepted Damian's plea and sentenced him to 240 months' imprisonment followed by five years' non-reporting supervised release, a $3,000 fine, and a $100.00 special assessment.

Damian timely filed a notice of appeal. After reviewing the record, his appellate counsel filed an *Anders* brief and motion to withdraw as counsel. The Court of Appeals for the Fifth Circuit dismissed the appeal[.]

Order Denying Section 2255 Mot. at 1–3, United States v. Damian-Lopez, No. 3:03-CR-02338-DB-3

(W.D. Tex. Oct. 29, 2010), [D.E. 132] (footnotes omitted); see Pet. [D.E. 3] 1 (providing criminal

case number). Damian is incarcerated at Rivers Correctional Institution, which is "a privately run

facility in North Carolina operated by GEO Group, Inc. under contract with the . . . Bureau of

2

Prisons." Holly v. Scott, 434 F.3d 287, 288 (4th Cir. 2006); see Mem. Supp. Pet. [D.E. 1] 2. Damian's projected release date is January 1, 2023. Mem. Supp. Pet., Exs. [D.E. 1-1] 1 (February 19, 2014 letter from Warden Tripp to Damian).

In 2004, Damian suffered "a stroke [which] left him paralized [sic] and wheelchair bound for life." Mem. Supp. Pet. [D.E. 1] 3; cf. Exs. [D.E. 1-1] 1 (letter indicating that Damian is "capable of walking with and without the wheelchair"). On June 6, 2013, Damian applied to Warden Tripp for a reduction in sentence on grounds of compassionate release. Mem. Supp. Pet. [D.E. 1] 2; see Exs. [D.E. 1-1] 3–4 (application). On February 3, 2014, Damian inquired into the status of his application, and on February 19, 2014, Warden Tripp wrote Damian and stated that the "medical report reflects you don't meet the medical criteria for compassionate release" but concluded with a statement that Damian's "medical condition would substantiate a compassionate release." Mem. Supp. Pet., Exs. [D.E. 1-1] 1–2. On May 22, 2014, Warden Tripp issued a "revised response" to Damian's application and stated that the concluding statement in his earlier letter was "an error" and denied his application. Mem. Supp. Pet., Exs. [D.E. 1-1] 9.

Damian asserts that Warden Tripp lacks the authority "to approve or disapprove any motion made under 18 USC 3582 (c)(1)(A)" because he is not a BOP official and that Warden Tripp further violated due process by failing to follow the regulatory procedure in determining that Damian did not qualify for compassionate release. Mem. Supp. Pet. [D.E. 1] 4–5, 8–10. Damian seeks "declaratory and injunctive relief as well as damages of $14,783,554.00 and the granting of his motion for Compa[ss]ionate Release under 18 USC 3582 (c)(1)(A) from the prison level under 28 USCS 2241 (habeas corpus)." Id. 2.

The court questions whether Damian has exhausted administrative remedies.

Inmates in private facilities who wish to grieve a specific BOP matter

3

> (which is limited to classification, designation, sentence computation, reduction of sentence, removal or disallowance of Good Conduct Time, or issues directly involving BOP staff) may utilize the progressive BOP administrative remedy process available to all federal inmates. The appeal must then be filed with the Chief of the BOP's Privatization Management Branch.

U.S. Dep't of Justice, Legal Resource Guide to the Federal Bureau of Prisons 37 (2014) (emphasis added), available at http://www.bop.gov/resources/pdfs/legal_guide.pdf (last visited June 10, 2015); cf. 28 C.F.R. § 571.63; Pollard v. GEO Grp., Inc., 607 F.3d 583, 595 n.12 (9th Cir. 2010), rev'd on other grounds sub nom. Minneci v. Pollard, 132 S. Ct. 617 (2012); Ducasse v. Pugh, No. CV 306-009, 2007 WL 1576443, at *2–3 & n.4 (S.D. Ga. Mar. 23, 2007) (unpublished), report and recommendation adopted in part, 2007 WL 1576441 (S.D. Ga. May 30, 2007) (unpublished).

Although the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), do not apply to a petition under 28 U.S.C. § 2241, a prisoner challenging the execution of his sentence must exhaust administrative remedies before seeking review in federal court. See Timms v. Johns, 627 F.3d 525, 530–33 (4th Cir. 2010); Garza v. Davis, 596 F.3d 1198, 1203 (10th Cir. 2010); Richmond v. Scibana, 387 F.3d 602, 604 (7th Cir. 2004). Requiring exhaustion provides an opportunity to resolve the dispute without litigation. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761–62 (3d Cir. 1996). Failure to exhaust is an affirmative defense that a defendant must plead and prove. See, e.g., Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005). Courts have treated exhaustion of administrative remedies in a section 2241 action as jurisdictional. See, e.g., Timms, 627 F.3d at 533.

Damian asserts that his "case is different as this is not a Federal Prison like the other cases and . . . [he] is simply asking his motion be moved along with his Medical records to the next level at the Bueraeu [sic] of Prison." Mem. Supp. Pet. [D.E. 1] 10. Damian alternatively contends that

4

Warden Tripp's delay in responding to his application was "well beyond any time frame for any Administrative Appeal of any kind to the BOP or General Councel [sic]" and serves as "exhaust[ion of] all avenues at the prison level for the Petitioner." Id.

Damian has not presented any circumstances warranting excusal of exhaustion. See, e.g., Figueroa v. Chapman, 347 F. App'x 48, 50 (5th Cir. 2009) (per curiam) (unpublished); Engle v. United States, 26 F. App'x 394, 396 (6th Cir. 2001) (per curiam) (unpublished). Nonetheless, the court need not address exhaustion because it has no authority to grant the relief Damian requests. "[A] number of courts have determined that the BOP's decision regarding whether or not to file a motion for compassionate release is judicially unreviewable." Crowe v. United States, 430 F. App'x 484, 485 (6th Cir. 2011) (per curiam) (unpublished) (collecting cases); see DeLuca v. Lariva, 586 F. App'x 239, 240 (7th Cir. 2014) (per curiam) (unpublished); Cruz-Pagan v. Warden, FCC Coleman-Low, 486 F. App'x 77, 79 (11th Cir. 2012) (unpublished).

To the extent Damian contends that Warden Tripp failed to follow applicable procedures in rejecting Damian's application, including "conv[ening] a committee to investigate the facts as required," Mem. Supp. Pet. [D.E. 1] 4, "[t]he relevant section of the BOP's Program Statement, entitled 'Denial of Request,' provides no standards or procedures that the BOP must follow in determining whether to deny a request for reduction of sentence, leaving it unlimited discretion." United States v. Yuk Rung Tsang, No. 00-CR-80541, 2014 WL 821304, at *1 (E.D. Mich. Mar. 3, 2014) (unpublished) (citing 28 C.F.R. § 571.63); see DeLuca, 586 F. App'x at 240–41; Briscoe v. Carter, No. 5:14CV40, 2014 WL 7272810, at *6 (N.D. W. Va. Nov. 10, 2014) (unpublished).

As for Damian's request for monetary damages, "damages are not an available habeas remedy." Nelson v. Campbell, 541 U.S. 637, 646 (2004); see McKinney-Bey v. Hawk-Sawyer, 69 F. App'x 113, 113–14 (4th Cir. 2003) (per curiam) (unpublished). Thus, the court denies Damian's

5

request for monetary damages.

In sum, the court DISMISSES petitioner's application for a writ of habeas corpus [D.E. 1, 3], and DENIES petitioner's motion to compel discovery [D.E. 4]. The court DENIES a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). The clerk shall close this case.

SO ORDERED. This 10 day of June 2015.

JAMES C. DEVER III
Chief United States District Judge